OLCOTT v. PASSAIC STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

MASTER AND SERVANT—INJURY TO EMPLOYÉ—FALLING BEAM—NEGLIGENCE.

One erecting a steel frame building is not liable to an employé for injury caused by one end of a steel beam slipping from a railroad tie on which it was resting, from a jar caused in raising steel columns, where the beam was originally properly placed on the tie, and was in a safe condition 2 days before the accident, and was first noticed by a fellow servant to have slipped into an insecure position about 45 minutes before the accident, where the foreman is not shown to have known, nor to have ground for supposing, the beam was out of place, and where the injured employé was an experienced structural steel worker, and the location of the beam was as observable to him as to any one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.]

Appeal from Trial Term, Oneida County.

Personal injury action by James H. Olcott against the Passaic Steel Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frederick G. Fincke, for appellant.
P. H. Fitzgerald, for respondent.

SPRING, J. In the spring of 1906 the defendant was erecting a structural steel frame building on Genesee street, in the city of Utica, and the plaintiff, an experienced structural steel worker, was in its employ. The frame was up to the third story, and the third floor was covered with 2-inch plank, except a strip about 8 feet in width extending along the entire south side of the building. The plaintiff was working on this floor, and had been at work five days. He was under a foreman named Rice, and there were seven or eight men at work on this floor when the plaintiff was injured. I-beams, 22 feet in length, had been hoisted by derricks and piled on the southeast corner of the third floor, to be used in the building construction. One end of

these beams rested on a railroad tie. The evidence does not show how long they had been on this floor, but for two days at least.

In the forenoon of April 21st the men were raising and putting in place steel columns about 30 feet in length and 10 inches square. These connecting columns were hoisted upright by a derrick operated by a steam engine, under the direction of Rice, who was by his derrick, 40 to 45 feet from where plaintiff was at work. At the top of each column there were iron plates, called "lugs," containing holes, and there were corresponding holes in the other columns. As a column was lowered, the men steadied it so it would go into the lugs, where it was made stationary by bolts. The impact of the column with the lugs made quite a heavy jar. On this same morning a column was being raised, and the plaintiff, with a co-employé, was steadying it to be placed in the lugs. The plaintiff was standing near the end of one of the heavy I-beams resting on the railroad tie, with his feet separated in order to brace himself, and as the impact came the I-beam slipped from the tie, striking the plaintiff's leg, and fracturing it.

The notice required by the employer's liability act was duly served, and the particular negligence imputed to the defendant is in so placing the I-beams "that the same were liable and likely to tip or fall over at any time and seriously injure any one who might be struck thereby."

There is no material controversy over the facts. Regis, a fellow workman of plaintiff, testified in his behalf, and described the location of the beam, which fell on the plaintiff, as follows:

"The I-beam next to where Olcott [the plaintiff] was working was just lying on the very end of the tie. It was just lying about half off on one end. The tie was about six inches thick. It was flattened on the top and bottom. The end was sawed off square. The I-beam was lying on the end of the tie, just about half of it over the end of the tie. I put my hand on it. It was pretty shaky. It moved at the top. That was about 10 o'clock in the morning. That was about three-quarters of an hour before Olcott was injured."

On cross-examination this witness further testified:

"I saw the I-beams lying there a couple of days before he was hurt. I worked around there. I was close to them, so I could see them. I saw how they were piled. I didn't notice on that day that one of these I-beams was only half on the railroad tie. I didn't notice that the first time. It was all right that day. The first time I saw the I-beams in the southeast corner they were piled all right so far as I know."

There is no evidence in the record which tends to contradict the testimony of Regis. So far as appears, therefore, the I-beam was originally properly placed on the railroad tie, and was in a safe condition two days before the accident. The first time it was observed to have been out of place was about three-quarters of an hour before the plaintiff was injured. There is no suggestion that the foreman knew of its insecure position on the tie, and there is no circumstance appearing indicating that he should have expected it was out of place. This was a building in process of erection, and the contractor could not be expected to have every piece of material used in its erection lying with absolute regularity. Again, the plaintiff was a man of long experience in this work, and the location of the tie was as observable to him as to any one; for he was in its immediate vicinity, and the foreman

some distance away from him. We think the plaintiff failed to make out a case. The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide event.

Judgment and order reversed, with costs to appellant to abide event. All concur.